CLEVELAND HEIGHTS (CITY), PLAINTIFF-APPELLEE, *v.* VAUGHN,

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26557. Decided October 17, 1963.

*Mr. Louis H. Orkin*, prosecutor, for plaintiff-appellee.
*Mr. Norman S. Minor*, for defendant-appellant.

CORRIGAN, J. Appellant was convicted of the misdemeanor of malicious destruction of property after a trial to the court in the Municipal Court of Cleveland Heights, and the case is before us on appeal on questions of law.

The sole assignment of error is that the trial court erred in its application of the law of circumstantial evidence to the evidence presented in the trial.

Eugene Vaughn was employed as a parking attendant and porter at the Waldorf Towers Apartment on Overlook Road for about a year and a half. He worked from twelve midnight until eight o'clock in the morning. On December 3, 1962, at 7:40 A. M., twenty minutes before he was to have been relieved by the morn-

ing attendant, he was discharged from this employment by Mrs. Ima Jean Hritz who managed the apartment building with her husband, Francis. This action was taken in the manager's apartment to which Vaughn had been summoned at that time. According to the testimony of Mrs. Hritz, some acrimony developed on this occasion on the part of Vaughn.

Vaughn left the resident manager's apartment and went down to the garage. Upon his leaving the apartment, Mrs. Hritz waited until Vaughn had cleared the corridor and went right down behind him. When she got down to the garage, she testified that she saw Vaughn in the garage between her car, a 1960 Dodge, and the automobile of a Mrs. Wolfstein. She testified at the trial that "* * *, and I saw him (Eugene Vaughn) going from the back of the car - - from the front of the car to the back, and from the back to the front of the car. When he gets to the front, I can no longer see him from where I'm at. He was walking between the cars with his hands down." Mrs. Hritz said that she thought that she was about twenty-five feet from Vaughn. When she observed him walk back and forth, she did nothing. Then she went to the laundry room and when she came out again to the garage, Mr. Vaughn was standing at a desk in which there was a drawer where tools were kept. After an exchange of words between an angry Vaughn and Mrs. Hritz and then between Vaughn and Willie, the day shift attendant, Vaughn left the building. Vaughn told Willie that he hoped he was satisfied that he had taken his job away from him.

Mrs. Hritz then went over to her automobile and noticed that the side was scratched. There were two scratch marks on the hood in the form of an X. Also, there were two very deep scratches on the driver's side of the body from the front light to the tail light. There were fresh paint particles for the full length of the car on the floor alongside of it.

The automobile was not scratched at 9:30 P. M., the evening before, when it was parked in that position in the garage. In answer to a question as to what Vaughn was doing by the car or what she saw him doing, Mrs. Hritz answered, "I don't know what he was doing."

The police were called to the garage and about noon of

that day they found a paring knife in the drawer of the desk. It was there with other tools. The knife had particles of paint on it which appeared to be the same as that of the automobile. The employees of the garage had access to this drawer. Another employee was on duty in the garage from 4:00 P. M. until midnight when he was relieved by Vaughn. The garage accommodates two hundred cars and there were one hundred four cars in the garage the night of December 2, 1962. One of the duties of the garage attendant at 9:30 P. M. each night is to clean the laundry room. At least one door to the garage is never locked and the doors are opened automatically by pressing a pedal at the outside driveway entrance. There is also a stairway to the basement from the first floor and an elevator. Thus, the garage is accessible to anybody. There was nobody on duty at the desk in the garage from 8:00 P. M. to 8:00 A. M. The garage attendant's duties included washing cars and seeing that the cars were parked in their proper places. It is possible, according to Mrs. Hritz's testimony, that an individual could take the elevator into the garage during the hours from 8:00 P. M. to 8:00 A. M. without being observed at the desk.

When arrested, Vaughn denied to the police that he committed the offense.

A Cleveland Heights detective testifying as to his conversation with Vaughn relating to this offense after his arrest said that Vaughn stated:

"She couldn't have seen me. I left her at her apartment." or

"The last time I saw her, she was at her apartment."

The record indicates that the defendant did not take the witness stand in his own defense.

These seem to be the salient facts in the record. The principle of law is clearly and firmly established in the jurisprudence of Ohio that where circumstantial evidence is relied upon in the proof of a crime, when the circumstances are reasonably reconcilable upon the theory of the innocence of the accused, the trier of the facts is bound to so treat them. It is only when the facts and circumstances are irreconcilable with any reasonable hypothesis other than guilt, that he can be convicted.

We must bear in mind the proposition that a reviewing court indulges in every presumption as to the correctness of the trial court's judgment. In connection with factual questions, a judgment will not be disturbed by the reviewing court unless there is a complete absence of testimony or the determination was so manifestly against the weight of the evidence as to demand a contrary conclusion.

No witness testified that the defendant was seen scratching the Hritz automobile. No witness testified that the defendant had the paring knife out of the drawer of the desk at any time that night or morning. No witness testified that he returned the knife to the drawer. Mrs. Hritz testified that when she saw Vaughn walk back and forth alongside of her car his hands were down. At that time she was about twenty-five feet from him. She also testified that several minutes afterward Vaughn was standing at the desk in which the knife was found several hours later. From these established facts, buttressed by the state of mind of Vaughn at being fired, in addition to his statements to the detective indicating that he did not know that Mrs. Hritz had followed him downstairs, could the court reasonably infer that Vaughn took the knife from the drawer of the desk, damaged the car with the knife, and then returned the knife to the desk drawer? Or, do such established facts just as reasonably support an inference of innocence?

Each link of the chain of circumstantial evidence when taken alone may not be conclusive of the guilt of the defendant, but when taken together with the other testimony, they make a case which, in our opinion, cannot be reconciled upon the hypothesis of innocence. In addition to this, the court below, as the trier of the facts, had the right to consider the fact that the defendant did not take the witness stand to explain any of the incriminating evidence against him. We find no error in the judgment of the trial court, and such judgment will be affirmed.

Judgment affirmed. Exceptions. Order see journal.

KOVACHY, J., concurs.
HURD, P. J., dissents.